Filed 5/2/22  In re H.L. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re H.L., a Person Coming Under the Juvenile Court Law. | C094621 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.L.,<br><br>Defendant and Appellant. | (Super. Ct. No. STKJVDP20180000466) |

Mother of the minor H.L. appeals from the juvenile court's August 2021 order that letters of guardianship would issue, with H.L.'s foster parents appointed as her legal guardians and visitation for mother at the discretion of the guardians.  Mother contends reversal is required because the juvenile court impermissibly delegated its authority in ordering that visitation was within the discretion of the guardians.  We agree and reverse the portion of the order addressing visitation and remand the matter.

1

FACTS AND HISTORY OF THE PROCEEDINGS

Given mother's contentions on appeal, we will limit our discussion of the factual and procedural background.

A.     Initial Detention

In February 2018, the Yolo County Health and Human Services Agency filed a dependency petition pursuant to Welfare and Institutions Code section 300, subdivisions (b)(1) and (c)(1) on behalf of H.L. and her four minor siblings who are not parties to this appeal.  (Statutory section citations that follow are to the Welfare and Institutions Code.)

The petition alleged that father was physically violent toward mother, exposing H.L. and her siblings to domestic violence.  Mother had maintained contact with father and failed to protect H.L. and her siblings.  The petition further alleged H.L. and her siblings had suffered serious emotional abuse from mother and father.  Mother also had untreated mental health issues.  H.L. and her siblings were placed in protective custody.  H.L. was eight years old at the time of the petition.

In February 2018, the juvenile court ordered H.L. and her siblings detained.  The court also ordered visitation and services for mother and father.  In March 2018, the court sustained the section 300 subdivision (b) allegations in the petition.  In April 2018, the court adjudged H.L. and her siblings to be dependents of the court and ordered out-of-home placement.  (§§ 360-361.)

In December 2018, the matter was transferred to San Joaquin County.  In a March 2019 status report, the San Joaquin County Human Services Agency (the Agency) noted H.L. had been placed in a home without her siblings and was doing well in her current placement.

In January 2020, the court ordered H.L.'s siblings (but not H.L.) to be placed with mother and father.  In February 2020, after holding a hearing that included testimony from H.L., the court terminated reunification services for mother and father with respect

2

to H.L. The court found by clear and convincing evidence that returning H.L. to mother and father would create a substantial risk of detriment to her safety, protection, or physical or emotional well-being. The court ordered bimonthly visitation with H.L. for mother and gave the social worker discretion to arrange supervised visitation with H.L. for father.

The Agency's August 2020 status report noted that H.L. (now 10 years old) had been living with her foster family since April 2019 and was "thriving." She was "the happiest she ha[d] been in her life" and "asked that they become her permanent family." H.L. did not want to return to mother and father's care because mother and father were emotionally and physically abusive, and she wanted "the chance to grow up free of the constant worry of abuse." Her foster parents wanted her to remain with them and were interested in adoption or guardianship. Meanwhile, H.L.'s biological family wanted her to return. With respect to visitation, H.L. wanted to visit with her siblings but not her parents. Mother refused to allow H.L. to visit with her siblings unless mother and father were also present. The Agency recommended setting a section 366.26 hearing, with a permanent plan of guardianship.

In September 2020, the court dismissed the dependency case as to H.L.'s siblings. In October 2020, the court set a section 366.26 hearing for H.L. in February 2021.

In its February 2021 status report, the Agency noted H.L. continued to thrive and be happy in her current placement. H.L. had tried to contact her biological family but was unable to reach them via the telephone. Mother continued to refuse to allow H.L. to visit with her siblings unless parents were present. The Agency continued to recommend guardianship with her current foster family, and the family wanted guardianship of H.L.

In its February 2021 section 366.26 WIC report, the Agency noted that mother said she had resumed cell service but would not take a call from a blocked number, even if she knew it was H.L. H.L.'s caregivers continued to express a desire to obtain guardianship of H.L., and the environment was stable, loving, and peaceful for her. H.L.

3

said she was still afraid of her biological family and wanted to remain with her current foster family. The Agency recommended visitation with mother to be scheduled and supervised by the guardians, and no visitation for father.

At the March 2021 contested section 366.26 hearing, the court heard testimony from the social worker, H.L., and mother. The social worker testified H.L. was afraid of father and did not want to return to her biological parents' care. H.L. had not visited with mother in nearly a year, although she had recently expressed interest in seeing mother and her siblings. However, mother failed to answer her phone or respond to voice messages and declined to visit with H.L. in person or via video conference. Mother also refused to allow H.L. to visit with her siblings unless mother and father were present. The social worker expressed concern about supervising visits because father had been belligerent.

H.L. (then age 11 years) testified she did not want to return to her parents' care because she felt unsafe. Although her previous visits with her family had been successful, she had not visited with her family since November 2019.

Mother testified that she wanted H.L. to come home. Mother described her prior visits with H.L. as loving and positive, with H.L. saying she wanted to come home. But, things changed when H.L. started living with her current foster family, and mother feared H.L. was being coached to say negative things about mother and father. Similar to H.L., mother testified that neither she nor father had visited with H.L. for over a year. After hearing the testimony, the court continued the matter to give H.L. the opportunity to speak with a therapist.

In June 2021, a therapist testified that H.L. remained afraid of her parents and feared father would not change, especially since father had been disruptive during the last hearing. H.L. did not want to live in fear of being hit. Father was again disruptive during the hearing and was asked to leave. The court ordered further psychological evaluation of H.L.

4

In a July 2021 report, the court appointed psychologist noted that H.L. liked her foster parents and wanted to remain in their care until she grew up. The psychologist opined H.L. understood the implications of guardianship or adoption.

During the August 2021 hearing, counsel for father and mother argued H.L. should be returned to her biological parents. Mother and father were disruptive. The court found by clear and convincing evidence that terminating parental rights would be detrimental to H.L. because her foster family was unwilling to adopt her because of exceptional circumstances, but the family was willing and able to provide H.L. with a stable and permanent home. The court appointed the foster parents as H.L.'s legal guardians, with letters of guardianship to issue. Visitation between H.L. and mother and father "is going to be at the discretion of the guardians," and H.L. would remain a dependent of the court. The dependency would be dismissed after the letters of guardianship were filed and issued. The letters of guardianship were filed and issued in September 2021.

Mother appealed.

## DISCUSSION

Mother argues the court's order that visitation between H.L. and the biological parents be at the discretion of the guardians was an impermissible delegation of the court's authority. We agree and will reverse and remand the matter for further proceedings.

When reunification has been terminated and the court adopts a permanent plan of guardianship, the court must make an order for visitation with the parents "unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child." (§ 366.26, subd. (c)(4)(c); *In re M.R.* (2005) 132 Cal.App.4th 269, 274.) A court may permit a legal guardian to determine the logistics of visitation, including time, place, and manner. However, leaving the

5

frequency and duration of visits to a guardian's discretion is impermissible because it allows the guardian to decide whether visitation actually will occur. (*In re M.R.*, *supra*, at p. 274; see also *In re Rebecca S.* (2010) 181 Cal.App.4th 1310, 1314.) This portion of the order therefore constituted an impermissible delegation of the court's authority and was an abuse of discretion. Given the Agency's recommendation in its 366.26 WIC report that there be no visitation with father, we cannot tell from the record what the court intended to order. We will remand the matter for the court to reconsider visitation.

### DISPOSITION

The portion of the order regarding visitation is reversed, and the matter is remanded to the juvenile court for further proceedings on the issue of mother's and father's visitation with minor. The court's orders are otherwise affirmed.

 

 

_____

HULL, Acting P. J.

 

We concur:

 

_____

DUARTE, J.

 

_____

EARL, J.